Paramount Liquor Company v. Commissioner.
Paramount Liquor Co. v. Commissioner
Docket No. 45859.
United States Tax Court
T.C. Memo 1955-152; 1955 Tax Ct. Memo LEXIS 189; 14 T.C.M. (CCH) 561; T.C.M. (RIA) 55152; June 14, 1955
*189 E. Charles Eichenbaum, Esq., and Leonard L. Scott, Esq., for the petitioner. Mark Townsend, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency in petitioner's 1949 income tax in the amount of $4,568.48. The sole issue is whether petitioner's claimed deduction for an addition to its reserve for bad debts in 1949 was reasonable. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Petitioner, a corporation, was organized under the laws of the State of Missouri. It kept its books and filed its income tax returns on an accrual basis and used the reserve method of accounting for bad debt losses. Petitioner filed its income tax return for 1949 with the collector of internal revenue for the first district of Missouri. Petitioner is engaged in the wholesale liquor business and has been in existence since 1934. It conducted its business only in the State of Missouri. It sells liquor to chain stores, hotels, retail liquor dealers, and taverns. The present stockholders acquired control of the corporation around May 1, 1947. Under regulations issued *190 by the Liquor Commission of Missouri liquor may not be sold by petitioner to a customer whose account is unpaid for 30 days or more, until such customer pays his account. Such an unpaid account is called a "delinquent" or "frozen" account. There might be a large number of frozen accounts in one month and a small number in the next. From 90 to 95 per cent of petitioner's accounts have been delinquent at one time or another. Petitioner is the exclusive distributor of a name brand. Customers on the delinquent list could not purchase this name brand of whiskey or any other brand exclusively sold by petitioner until they had paid their account. In December of each year delinquent accounts decreased for the reason that every customer wanted to get off the delinquent list so that he could purchase ample merchandise for December. At the end of the calendar year 1949 petitioner's president, a certified public accountant, and the credit manager, went over the accounts to determine the appropriate reserve. The president was one experienced in the liquor industry in Arkansas, Louisiana, Texas, and Missouri. He was also vice president of the Missouri Liquor Dealers' Association. The certified *191 public accountant had over 10 wholesale liquor businesses as his clients. He was familiar with the liquor business. It was not the practice of petitioner to charge off as a bad debt an account simply because it became delinquent. Petitioner was conservative in his charge-offs and wrote them off only when a particular account could not be located or had no assets and the debt was uncollectible. Petitioner adhered to this practice, not only to stimulate salesmen and others to collect, but also to avoid violation of the law by reselling a delinquent account. During 1949 petitioner liberalized its credit policy by increasing limits to accounts and granting credit to more customers. In 1949 petitioner's addition to its reserve for bad debts was based on 4/10ths of 1 per cent of charge sales. After this addition, the balance in the reserve account amounted to approximately 5 per cent of accounts receivable. The following table shows the 1949 addition to reserve for bad debts as it compares to other accounts on petitioner's books: Accounts
Bad debts
Year
Credit
receivable
charged
Bad debts
Addition
to
toshReserve
balance
ended
sales
end of year
reserve
recovered
reserve
end of
year
12-31-46
$123,633.22
$ [1] 0
$350.00
$1,034.79
$ 1,234.79
12-31-47
$1,707,014.34
291,922.26
1,861.33
0
7,454.60
6,828.06
12-31-48
2,484,779.15
320,812.49
1,287.14
[2] 65.73
9,939.12
15,480.04
12-31-49
2,308,186.90
365,094.90
6,579.86
241.69
9,232.75
18,374.62
12-31-50
429,156.42
5,957.95
[2] 381.50
5,957.95
18,374.62
*192 The respondent explained the adjustment to petitioner's 1949 net income as follows: "(a) You claimed a deduction on your income tax return for bad debts in the amount of $9,232.75, which represented the amount of the increase in the reserve for bad debt account, whereas the information on file shows the balance in the reserve for bad debts account is sufficient without any increase. The amount of the increase of $9,232.75 is, therefore, disallowed and income increased accordingly." Opinion Under section 23(k)(1) of the 1939 Code, a reasonable addition to a reserve for bad debts may be taken as a deduction in computing net income. In the present case petitioner claimed that a sum of $9,232.75 for 1949 was a reasonable addition to its bad debt reserve. However, respondent determined that the amount claimed by petitioner was not a reasonable addition because the balance in petitioner's reserve *193 account at the end of the year was sufficient to meet anticipated bad debts without any addition to the reserve. The fundamental issue, whether the addition is reasonable, is a question of fact and should be based on such things as a taxpayer's past experience, general business conditions, the nature of the business, and the amount of the existing reserve. See . During 1949 petitioner charged some $6,579.86 of bad debts to the reserve. At the end of the year, with petitioner's addition of $9,232.75 and the addition of $241.69 of bad debts recovered, the balance in the reserve was $18,374.62. The balance in the reserve account at the beginning of 1949 was $15,480.04. This means that the balance in the 1949 reserve account was $9,141.87, after adjustments for bad debt losses and recoveries, but before making an addition to the reserve. This amount was more than one and one-third times the aggregate 1949 bad debts, and 1949 was the highest bad debt year for the period 1946 through 1949. By the addition of $9,232.75 petitioner more than doubled its bad debt reserve. We can not find from the record that petitioner anticipated *194 doubling its credit sales or its accounts receivable in 1949. Further, there is not sufficient evidence to find that petitioner anticipated doubling its bad debt losses. There is evidence of such things as greater competition in the whiskey business and petitioner's assumption of more credit risks, but these would only support a finding that petitioner anticipated an increase in bad debts. However, without any addition to the reserve for bad debts, the balance in the bad debt reserve account at the beginning of 1950 would have permitted an increase in that year of almost 40 per cent over 1949 bad debt losses. The credit record for years after 1949 is admissible as corroboration of the reasonableness of respondent's determination. , affd. . From this we find that bad debts charged to petitioner's reserve were $5,957.95 in 1950 and $2,974.40 in 1951. Thus, the balance in the reserve account at the beginning of 1949, without any addition to the reserve, would have been sufficient for 1949, 1950 and 1951. In our opinion, considering the record as a whole, petitioner's addition of $9,232.75 to its bad debt reserve *195 in 1949 was unreasonable. Decision will be entered for the respondent. Footnotes
1. There was an actual bad debt of $1,034.79 which was charged directly to expense. Thus, although the reserve had been increased by reason of this particular account, the reserve account has not been reduced by the charge off (made directly against expense). ↩
2. Reported as income.↩